UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No.   14 CR 390-2 |
| | ) | Honorable Amy J. St. Eve |
| TYLER LANG | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

Because defendant intentionally shut down a business, causing a family to lose their retirement savings, defendant's properly calculated guidelines range is 15 to 21 months' imprisonment. Nevertheless, defendant requests this Court sentence him to probation. Dkt. 157. That request does not adequately reflect defendant's background or the seriousness of the offense. More specifically:

Defendant asserts that his properly calculated criminal history category of II overstates the seriousness of his criminal past, claiming that, "by virtue of a theft worth less than $15 [he] is classified as a criminal history category II." Dkt. 157 at 4. That characterization is inaccurate. Defendant did receive one criminal history point for his misdemeanor conviction – a number that on its own would put him in a criminal history category I. The judge who sentenced defendant for that theft recognized the low value of the merchandise stolen and gave defendant an opportunity by sentencing him to a term of three years' probation. The judge in that case placed trust in defendant to abide by the terms of his probation and stay out of trouble.

1

What then raised defendant to a criminal history category II was not the $15 worth of merchandise he stole, but the fact that he defied the judge by violating the terms of his probation. And the violation was not an insignificant one. Despite the conditions set by that judge, defendant set out on a cross-country trip to vandalize, destroy, and shut down lawful businesses. It is for that conduct that defendant received the two additional criminal history points. And it is his intentional defiance of that court order, which is predictive of the prospect for recidivism, that places him in a separate category.

Defendant's argument also illustrates why probation is not an appropriate sentence for defendant in this case. On the one hand, defendant contends that his violation of the probation set by another court is so insignificant that it should be ignored by this Court. On the other, he requests a term of probation in this case, claiming that probation is an incredibly serious punishment with significant ramifications. Dkt. 157 at 9-11. Defendant cannot have it both ways, arguing that his previous violation should not warrant consideration while maintaining that he will take seriously the probation he requests now.

Defendant's probation violation also renders his remaining arguments concerning his lack of criminal history beside the point. Defendant rightfully points out that the government hopes that an individual who has never served time in the past will be deterred by a relatively light sentence.[1] However, that point is lost on

---

1 The government notes that its recommendation of 21 months' imprisonment with credit for time served in state custody is, in and of its own, a relatively "light" sentence given the

2

defendant – a person who already has been given that break. He was given a chance by a judge to abide by the law for three years, in which case his term of court supervision would be terminated. But defendant brazenly disregarded that. A second term of probation will do nothing to further deter defendant from breaking his promise again.

Defendant argues that he has never previously been involved in illegal activism and specifically disavows membership in "ALF." Dkt. 157 at 7. First, the government has not alleged defendant to be a member of "ALF." It is defendant's actions that matter, not his affiliations with any one group over another. Second, defendant's statement is belied by the record. While this is defendant's first criminal conviction for engaging in illegal activism, his arrests listed in the PSR (at 9), the injunctions entered against defendant to prevent him from continuing to harass law abiding individuals, and statements submitted by the government from the UCLA researchers establish otherwise. While the government has no doubt that defendant has engaged in forms of lawful activism, the documents submitted by the government establish that defendant also has been involved in activism aimed at harassing and threatening. Though his campaign of harassment has not been criminally punished, it has received the attention of the courts, who have agreed that defendant must be stopped. Yet he has been undeterred up until even now.

---

drastic consequences of his criminal behavior on the victim. The government's recommendation, which is significantly less than that recommended for co-defendant Johnson, is driven by a consideration of defendant's background, which does not include a serious criminal history. The government notes for comparison that co-defendant Johnson also presented significant factors in mitigation – factors that are not present in this case.

In fact, in his letter to the Court, defendant claims that while on pretrial release he has found productive ways to advocate for his cause. But defendant fails to address the fact that while on pretrial release, he has continued to stage protests outside the homes of the researchers, potentially in violation of the law. While the government does not seek to quibble about whether defendant was within 100 feet of those researchers' homes (as the victim reports), the point is that harassment is not – nor has it ever been – a productive way of advancing one's cause. The statements submitted to the court explain why defendant's conduct is not only potentially a violation of the law but also incredibly damaging to his target.

In requesting a sentence of probation, defendant also downplays the seriousness of his offense. In both his memo and his letter to the Court, defendant repeatedly states that he has seen the error of his ways, and apologizes for his conduct. However, he cabins that acceptance by repeatedly stating that he did not understand the ramifications of his conduct. For example, in his letter, defendant stated, "learning that the fur farmers felt uneasy in their own home due to my actions made everything all the worse. I never intended for them to be harmed emotionally." Those statements cannot be squared with defendant's conduct. The entire purpose of defendant's crime – and the reason it is so serious and worthy of jail time – was to shut that farm down. The whole point was to send a message to the farmers that they should feel uneasy – fear the ramifications of continuing to engage in their business. To assert otherwise is to so seriously place in question

4

whether defendant has honestly and completely accepted responsibility for his crime.

Similarly, defendant claims to feel empathy for the farmers, yet has failed to address in papers how he will make the farmers whole. He has allegedly worked the entire time he has been on pretrial release, yet the farmers have not received a single payment thus far. Nor does defendant propose a meaningful plan for addressing the restitution. It is easy for defendant to claim he is sorry, but there is nothing in his actions to support those claims.

Last, defendant's request for probation, setting everything else aside, is simply insufficient to account for what defendant did. Defendant claims that "[w]hat he did was wrong. He has admitted it, taken responsibility for it, and already served time in jail for it." Dkt. 157 at 9. But defendant admits that the time he "already served" was only three months. While the government agrees that defendant should receive credit for the time that he served in state custody,[2] a total of three months' imprisonment is insufficient. Defendant's crime not only resulted in $200,000 in actual loss, it shut down a lawful business, and robbed a hard working family of their retirement. That crime also undermined lawful activism and left a stain on law abiding activists who attempt to create social change through productive means.

---

[2] The government agrees that the Court has the discretion to credit time served by a defendant from a discharged term of imprisonment and agrees that a credit is worthy in this case. The government objected to a credit for the time served in state custody for co-defendant Johnson because of his more significant criminal past and more extensive involvement in illegal activism.

5

A sentence must fit the person, but it also must fit the crime. Defendant's request for probation would do neither. It would not adequately deter a person who has previously violated the terms of his probation. It would not account for the fact that the crime decimated the hard work of a family. And it would not deter unlawful activists from committing crimes in the future that serve no function but to undermine meaningful activism.

    Respectfully submitted,

    ZACHARY T. FARDON
    United States Attorney

By:   /s/ Bethany K. Biesenthal
       BETHANY K. BIESENTHAL
       WILLIAM RIDGWAY
       Assistant United States Attorneys
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 886-7629